**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

December 19, 2022

Steven Stuart Katz, Esq.
Chiesa, Shahinian, Giantomasi PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
*Counsel for Plaintiff*

Ping Yip
58 West Saddle River Road
Saddle River, New Jersey 07458
*Pro Se Defendant*

Gene William Baillargeon
60 West Passaic Street
Maywood, NJ 07607
*Pro Se Defendant*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re:** *Liberty Mutual Ins. Co. v. Ping Yip a/k/a Winnie Yip and Gene William Baillargeon*, **Civ. No. 20-03641 (SDW) (AME)**

Counsel and Litigants:

Before this Court is Ping Yip's ("Defendant Yip") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), (D.E. 79)[1]; Liberty Mutual Insurance Co.'s ("Plaintiff") Motion for Summary Judgment pursuant to Rule 56, (D.E. 80); and Gene William Baillargeon's ("Defendant Baillargeon") Motion to Object to Ping Yip's Motion to Dismiss, (D.E. 81), and Motion Requesting a Trial by Jury and Requesting Motion to Object to Liberty Mutual Insurance Compan[y's] Motion for Summary Judgment, (D.E. 82). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is

---

[1] Citations to "D.E." refer to the docket entries for the Amended Complaint and the parties' motion papers, including briefs, affidavits, declarations, and the documents attached to and referenced therein.

issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendant Yip's Motion to Dismiss is **DENIED**, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Defendant Baillargeon's Motions are **DENIED**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

This matter arises from an alleged breach of contract action relating to an indemnity agreement (the "Agreement") that *pro se* Defendants Yip and Baillargeon executed when seeking to obtain a conservatorship bond (the "Bond") from Plaintiff.  (*See* D.E. 3 ("Am. Compl.").)  In September of 2016, a New Jersey Surrogate Court appointed Defendants as co-conservators of Felice A. Trotta ("Trotta"), an incapacitated person. (D.E. 80-3, Plaintiff's Statement of Material Facts ("PSMF") ¶ 1.)  As a condition to serving as conservators, Defendants were required to "obtain a [c]onservatorship [b]ond in the penal sum of $1,000,000." (PSMF ¶ 2.)  Defendants sought the assistance of New Jersey Bonding and Surety Agency, Inc. ("NJB"), an agency that helps clients procure bonds from surety companies. (D.E. 91 at 6–7.)  NJB assisted Defendants with applying to Plaintiff for the Bond. (*Id.* at 7.)  Plaintiff agreed to issue the Bond and required Defendants to indemnify Plaintiff. (PSMF ¶ 3.)  On or about October 6, 2016, Defendants signed the Agreement "as a condition of and in consideration for the future execution of such a bond." (PSMF ¶¶ 3–4.)  The Agreement provided that Defendants assented to the following:

> (2) to deliver evidence satisfactory to Surety, of the release of all liability;
>
> (3) to exonerate and indemnify Surety from and against all claims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever which Surety may incur in any manner related to the extension of credit, including the enforcement of the agreements

---

[2] The facts derive largely from Plaintiff's Statement of Material Facts.  Local Rule 56.1(a) provides the following:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. . . . Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

In response to Plaintiff's Statement of Material Facts, (D.E. 80-3), Defendant Yip filed a document titled, "STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-2," which was improperly included in the brief Defendant Yip submitted, in which she failed to clearly articulate disputed material facts, and which contains arguments and various conclusions of law.  (*See* D.E. 87-1 at 10–14.)  Defendant Baillargeon did not submit a cognizable response to Plaintiff's Statement of Material Facts, and instead submitted a brief that does not comport with the applicable Local Rule and contains arguments and various conclusions of law.  (*See generally* D.E. 82.)  Consequently, this Court relies upon Plaintiff's Statement of Material Facts, as—in accordance with the aforementioned Local Rule—the facts contained therein are deemed undisputed for purposes of the summary judgment motion.

> contained herein and any matter subject to any bankruptcy court (collectively "LOSS");
>
> (4) [t]hat Surety shall have the right, at its sole discretion, to pay, adjust, settle or compromise any LOSS and the voucher or other evidence of such payment, settlement or compromise, whether Surety was liable therefore or not, shall be prima facie evidence of the fact and extent of Indemnitor's liability;
>
> (5) to place Surety in funds immediately upon demand, the amount Surety deems necessary to protect itself from any LOSS or potential LOSS, whether or not Surety has made payment or posted a reserve, Surety having the right to use all or part of these funds in payment or settlement of any LOSS or in reimbursement to Surety for payment of same . . . [;]
>
> (10) that these covenants shall be jointly and severally binding upon Indemnitor, its respective heirs, executors, administrators, successors, and assigns . . . .

(PSMF ¶ 5.) On or about October 12, 2016, Plaintiff issued the Bond on behalf of Defendants. (PSMF ¶ 6.)

On or about January 18, 2018, Trotta's counsel filed a verified complaint in the Bergen County Superior Court, Chancery Division, seeking the removal of Yip and Baillargeon as Trotta's conservators and alleging damages. (PSMF ¶ 7.) On October 5, 2018, the court removed Defendants as co-conservators and appointed The State of New Jersey, Office of the Public Guardian for Elderly Adults ("OPG") as Trotta's guardian.[3] (PSMF ¶¶ 7–8.) On July 23, 2019, "the court ordered the matter to proceed to trial to determine the issue of amounts owed to Trotta by [Defendants] . . . ." (PSMF ¶ 9.)

On August 28, 2019, the OPG alerted Plaintiff of a potential claim against the Bond. (PSMF ¶ 10.) After investigating the potential claim, Plaintiff demanded Defendants provide "funds in the amount of $400,000" to protect it from loss. (PSMF ¶ 11.) Defendants each refused to comply with Plaintiff's demand. (PSMF ¶ 12.) After completing discovery in the Removal Proceeding, Plaintiff negotiated and settled the claim with the OPG for $325,000 and was subsequently released from its obligations under the Bond. (PSMF ¶¶ 13, 15–17.) On February 19, 2020, Plaintiff demanded indemnification from Defendants for the loss it incurred due to the settlement, attorneys' fees, costs, and expenses that Plaintiff incurred. (PSMF ¶¶ 17–22.)[4]

---

[3] *See In the Matter of Felice A. Trotta, AKA Felix Trotta, Conservatee*, filed under Probate Part Docket No. P-534-17 (the "Removal Proceeding"). (PSMF ¶ 7.)

[4] Plaintiff's total demand of $463,102.45 represents the settlement amount of $325,000.00, forensic accounting fees of $13,015.00 to "analyze the records of disbursements made by the [Defendants] from Trotta's assets," and attorneys' fees of $125,087.45 incurred in "the investigation and settlement of the Claim and prosecution of its indemnity claims in this action." (PSMF ¶ 20.)

3

Plaintiff filed an Amended Complaint on April 6, 2020, alleging six counts: Contractual Indemnification (Counts I and VI); Breach of Contract (Count II); Specific Performance (Count III); *Quia Timet* (Count IV); and Exoneration and Common Law Indemnification (Count V). (*See* Am. Compl. ¶¶ 31–60.)

Following discovery, on June 27, 2022, Magistrate Judge André M. Espinosa ordered the parties to file any respective motions for summary judgement by July 22, 2022. (D.E. 78.) Defendant Yip filed a Motion to Dismiss on July 20, 2022. (D.E. 79.) Plaintiff filed a Motion for Summary Judgment on July 22, 2022. (*See* D.E. 80.) On July 22, 2022, Defendant Baillargeon filed two Motions in response to Defendant Yip's Motion to Dismiss and Plaintiff's Motion for Summary Judgment.[5] (*See generally* D.E. 81, 82, 97.) The parties thereafter put forth timely briefing.[6] (*See* D.E. 81, 82, 87, 90, 91.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing the existence of . . . an issue for trial." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing FED. R. CIV. P. 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in

---

[5] Defendant Baillargeon filed a "MOTION TO OBJECT TO PING YIP'S MOTION TO DISMISS," (D.E. 81), which the Court has construed as an opposition brief to Defendant Yip's Motion to Dismiss, (D.E. 79). Defendant Baillargeon also filed a "MOTION REQUESTING A TRIAL BY JURY AND REQUESTING MOTION TO OBJECT TO LIBERTY MUTUAL INSURANCE COMPANIES MOTION FOR SUMMARY JUDGMENT," (D.E. 82), which the Court has construed as an opposition brief to Plaintiff's Motion for Summary Judgment, (D.E. 80). Defendant also filed a "MOTION for Settlement," (D.E. 97), which was terminated by the Court for non-compliance with a previously issued order. (*See* D.E. 100).

[6] Defendants filed additional letters and exhibits that do not comport with briefing requirements in the Local Rules and do not have cognizable significance to the legal determinations at issue in this matter. (*See* D.E. 92, D.E. 93, D.E. 98.) Accordingly, this Court disregards these improper filings.

his [or her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record [that] supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322–23)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citing *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)).

## II. <u>DISCUSSION</u>

This Court first addresses Defendant Yip's Motion to Dismiss, (D.E. 79), under Rule 12(b)(6), and finds that it is untimely. Under Rule 12, a motion to dismiss "must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Plaintiff Yip answered the Amended Complaint on September 14, 2020, (D.E. 11), thereby waiving her right to file a Rule 12(b)(6) motion to dismiss. Even if the Motion to Dismiss had been timely, this Court would deny the motion for the reasons elucidated below.

Turning to Plaintiff's Motion for Summary Judgment, Defendants have failed to set forth any genuine issues of material fact in dispute. Consequently, under applicable indemnity law and the unambiguous contract language present here, Plaintiff is entitled to judgment as a matter of law.

Indemnification agreements are "[i]nterpreted with the general principles of contract law." *Guar. Co. of N. Am. USA v. SBN Enters., Inc.*, No. 09-5399, 2011 WL 3205318, at *2 (D.N.J. July 27, 2011) (quoting *IFC, Interconsult, AG v. Safeguard Int'l Partners, LLC*, 428 F.3d 298, 317 (3d Cir. 2006); *Englert v. The Home Depot*, 911 A.2d 72, 77 (N.J. Super. Ct. App. Div. 2006)). "[W]here the terms of a contract are clear . . . the court must enforce it as written." *Guar. Co. of N. Am. USA*, 2011 WL 3205318, at *2 (quoting *Cnty. of Morris v. Fauver*, 707 A.D. 958, 969 (N.J. 1998)); *XL Specialty Ins. Co v. Torchio Bros.*, No. 07-2330, 2008 WL 2875448, at *2 (D.N.J. July 23, 2008) ("The clear and unambiguous language of the Indemnity Agreement contractually obligates the Indemnitors to indemnify [plaintiff] from losses, costs and expenses incurred in connection with the Bonds.")). Furthermore, "summary judgment is an appropriate method of resolving disputes concerning indemnification agreements." *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 581 (E.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3d Cir. 1999) (citations omitted); *Centennial Ins. Co. v. Horizon Contracting Co., LLC*, No. 05-3917, 2008 WL 4791657, at *9

(D.N.J. Oct. 31, 2008) (recognizing a *prima facie* evidence clause in an indemnity agreement as valid and enforceable, and granting partial summary judgment to indemnitors); *see also Andre Const. Assoc., Inc. v. Catel, Inc.*, 681 A.2d 121, 123 (N.J. Super. Law Div. 1996) ("Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions.").

Courts have previously held indemnification clauses similar to the Agreement at issue in this matter as valid and enforceable. *See, e.g.*, *Fallon Elec. Co., Inc. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997); *U.S. Fidelity & Guar. Co.*, 15 F. Supp. at 584; *Centennial Ins. Co.*, 2008 WL 4791657, at *2. Here, Plaintiff and Defendants each confirm that they signed the Agreement. (D.E. 80-3 ¶ 4; D.E. 82 ¶ B; D.E. 87-1 at 4.) Defendants were required by the agreement to "exonerate and indemnify [Plaintiff] from and against all claims, losses, liability, damages, of any type" in connection with the performance of its obligations under the Bond. (*Id.*) When Defendants failed to do so, they breached their obligations under the Agreement.

Plaintiff has sufficiently demonstrated that it incurred losses as a result of settling the claim against the Bond. (*See* D.E. 80-2; 91-2.) The Agreement provided Plaintiff the right to negotiate and pursue the settlement with the OPG, as it provided that Plaintiff "shall have the right, at its sole discretion, to pay, adjust, settle or compromise any LOSS and the voucher or other evidence of such payment, settlement or compromise, whether Surety was liable therefore or not, shall be prima facie evidence of the fact and extent of Indemnitor's liability." (PSMF ¶ 5.) Moreover, the Agreement indemnified Plaintiff "from and against all claims, losses, liability, damages of any type (including punitive), costs, fees, expenses, suits, orders, judgments, or adjudications whatsoever which Surety may incur in any manner related to the extension of credit, including the enforcement of the agreements contained herein . . . ." (*Id.*) Accordingly, pursuant to the plain terms of the Agreement, Plaintiff is entitled to indemnification for the cost of the settlement, attorneys' fees, and any other reasonable associated costs.

Defendants have not established any genuine issues of material fact concerning the Agreement. Defendants' arguments, which largely center on their own misconstruing of the financial ramifications of signing the Agreement, do not present any evidence of malfeasance on the part of Plaintiff or demonstrate that any language in the contract is in question or at issue. (*See generally* D.E. 82 and D.E. 87-1.) The arguments amount to no "more than just 'bare assertions, conclusory allegations or suspicions'" concerning the settlement negotiations and regarding the NJB agent's explanation of the Agreement and do not "show the existence of a genuine issue" that must be resolved at trial. *See Podobnik*, 409 F.3d at 594. Defendants' signing of the Agreement obligated each of them to abide by its terms. *See Global Outreach, LLC v. YA Global Invs., L.P.*, No. 12-04159, 2013 WL 1339173, at * (D.N.J. Mar. 28, 2013) ("[W] where a defendant signs a written contract containing the terms of the agreement, he assumes those exact terms, which cannot 'be varied or contradicted by parol' evidence." (quoting *Winoka Vill., Inc. v. Tate*, 84 A.2d 626, 628 (N.J. Super. Ct. App. Div.1951)). Therefore, this Court must enforce the provisions of the Agreement.

Finally, courts have long recognized that co-signers on a contract are jointly and severally liable under its terms. *See, e.g.*, *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) (noting that there is "a strong trend in favor of a principle that co-signers or co-obligors on a contract are jointly and severally liable for its performance"); *Guar. Co. of N. Am. USA*, 2011 WL 3205318, at *2. In this case, not only did each Defendant sign the Agreement, which renders each liable, the Agreement explicitly provides that its terms "shall be jointly and severally binding upon [Defendants]. . . ." (D.E. 80-2 at 14; *see also* PSMF ¶ 23.) In accordance with the explicit terms of the Agreement, Defendants are jointly and severally liable for Plaintiff's loss of $463,102.45 plus interest and costs.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Yip's Motion to Dismiss, (D.E. 79), is **DENIED**. Plaintiff's Motion for Summary Judgment, (D.E. 80), is **GRANTED**. Defendant Baillargeon's Motions, (D.E. 81, 82) are **DENIED** and construed as briefs. An appropriate order follows.

                                                   /s/ Susan D. Wigenton
                                       **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties
        André M. Espinosa, U.S.M.J.